## UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

RANDY J. HENSLEY,                                    Case No. 1:15-cv-711
     Plaintiff,                                    Barrett, J.
                                       Litkovitz, M.J.
     vs.

COMMISSIONER OF                                    **REPORT AND**
SOCIAL SECURITY,                                   **RECOMMENDATION**
     Defendant.

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application for disability insurance benefits (DIB). This matter is before the Court on plaintiff's Statement of Errors (Doc. 7), the Commissioner's response in opposition (Doc. 14), and plaintiff's reply (Doc. 15).

## I. Procedural Background

Plaintiff protectively filed an application for DIB on September 30, 2009, and a written application for DIB on March 1, 2011.[1] (Tr. 430-31). Plaintiff alleged disability since July 23, 2006, due to "[b]lackout spells," "[c]onstant headaches," "neck collapsing against spine C5 & C6," and "[b]ack problem T1 & T2." Plaintiff's application was denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before ALJ Ena Weathers. Plaintiff and a vocational expert (VE) appeared and testified at the ALJ

---

[1] The Social Security Administration (SSA) designated September 30, 2009, which was the date plaintiff had filed a request for a hearing on a prior application, as the protective filing date (PFD) of plaintiff's DIB application. (Tr. 430). The ALJ treated plaintiff's written DIB application as having been protectively filed on that date, and the Commissioner and plaintiff both agree that September 30, 2009 is the proper filing date for the application at issue in this appeal. (*See* Doc. 14 at 1, n.1; Doc. 15 at 4). Therefore, to the extent plaintiff contends in his statement of errors that the ALJ effectively "reopened" the September 30, 2009 application (Doc. 7 at 10), any alleged error in this regard is moot as the parties now agree that September 30, 2009 is the operative date of the DIB application on appeal.

hearing.  On May 15, 2014, the ALJ issued a decision denying plaintiff's DIB application.

Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ

the final administrative decision of the Commissioner.

## II.  Analysis

### A.  Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable

physical or mental impairment that can be expected to result in death or that has lasted or can be

expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 423(d)(1)(A).

The impairment must render the claimant unable to engage in the work previously performed or

in any other substantial gainful employment that exists in the national economy.  42 U.S.C. §

423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation

process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.  If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)).

The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

Plaintiff initially filed an application for DIB in 2008, alleging disability since July 23, 2006. (*See* Tr. 115-16). ALJ Gregory Kenyon issued a written decision dated January 25, 2011, finding plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 389-403). In rendering her decision on plaintiff's subsequent DIB application, ALJ Weathers recognized she was bound under principles of administrative res judicata by ALJ Kenyon's prior finding as to plaintiff's residual functional capacity (RFC) "absent new and material evidence documenting a significant change in [plaintiff's] condition[.]"[2] (Tr. 25, citing Acquiescence Rulings (AR) 98-3(6), 98-4(6); *Drummond v. Commissioner of Social Sec.*, 126 F.3d 837, 841 (6th Cir. 1997)).[3]

---

[2] ALJ Kenyon determined that from December 1, 2008 through the date of his decision, plaintiff retained the RFC to "perform light work as defined in 20 CFR 404.1567(b) except he can only occasionally crouch, crawl, stoop, kneel, and climb ramps or stairs; never climb ladders, ropes, or scaffolds; only occasionally perform overhead reaching; and he cannot work around hazards such as unprotected heights or dangerous machinery. He is limited to work with no driving of automotive equipment and no concentrated exposure to temperature extremes or any exposure to vibrations. He is limited to unskilled simple, repetitive tasks with only occasional contact with coworkers, supervisors, and the public. He is further limited to work with no rapid production pace work." (Tr. 397).

[3] These authorities are discussed *infra.*

ALJ Weathers determined that ALJ Kenyon's findings restricting plaintiff to a reduced range of light-exertion work continued to apply. (Tr. 25). ALJ Weathers found no evidence of a material change in plaintiff's RFC prior to December 31, 2011. (Tr. 34). ALJ Weathers applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. The [plaintiff] last met the insured status requirements of the Social Security Act on December 31, 2011.

2. The [plaintiff] did not engage in substantial gainful activity during the period from his alleged onset date of July 23, 2006 through his date last insured of December 31, 2011 (20 CFR 404.1571-1576).

3. Through the date last insured, the [plaintiff] had the following severe impairments: diabetes mellitus with neuropathy, degenerative joint disease and adhesive capsulitis of the shoulders, headaches, cervical spine degenerative disc disease, obesity, and depression (20 CFR 404.1520(c)).

4. Through the date last insured, the [plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the [ALJ] finds that, through the date last insured, the [plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he could occasionally crouch, crawl, stoop, kneel, and climb ramps or stairs; never climb ladders, ropes, or scaffolds; only occasional overhead reaching; unable to work around hazards such as unprotected heights or dangerous machinery; limited to work with no driving of automotive equipment and no concentrated exposure to temperature extremes or any exposure to vibration; limited to unskilled, simple, repetitive tasks with only occasional contact with coworkers, supervisors, and the public; limited to work with no rapid production pace; the ability to change from a standing to a seated position or vice versa for one to two minutes every hour to two hours without interference with work product; and frequent fine fingering bilaterally.

6. Through the date last insured, the [plaintiff] was unable to perform any past relevant work (20 CFR 404.1565).[4]

---

[4] Plaintiff's past relevant work was as a truck driver and newspaper delivery driver, which was semi-skilled work performed at the "very heavy exertional level." (Tr. 36).

4

7. The [plaintiff] was born [in] . . . 1962 and was 49 years old, which is defined as a younger individual age 18-49, on the date last insured. The [plaintiff] subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the [plaintiff] could have performed (20 CFR 404.1569, 404.1569(a)).[5]

11. The [plaintiff] was not under a disability, as defined in the Social Security Act, at any time from July 23, 2006, the alleged onset date, through December 31, 2011, the date last insured (20 CFR 404.1520(g)).

(Tr. 27-38).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

---

[5] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative occupations such as cleaner (2,100 jobs in the region and 380,000 jobs in the nation); price marker (2,000 jobs in the region and 220,000 jobs in the nation); and photocopy machine operator (600 jobs in the region and 70,000 jobs in the nation). (Tr. 37). The VE actually testified that the hypothetical individual would be unable to perform the price marker job but would be able to perform the job of mail sorter, with approximately 700 jobs in the Cincinnati region and 70,000 jobs in the nation. (Tr. 37, 1098).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007)). *See also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545-46 (6th Cir. 2004) (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

Principles of administrative res judicata apply to a decision concerning a claimant's eligibility for social security benefits. *Drummond v. Commissioner of Social Security*, 126 F.3d 837, 841 (6th Cir. 1997); AR 98-4(6), 1998 WL 283902 (June 1, 1998). Social security claimants and the Commissioner alike are barred from re-litigating issues that have previously been determined. *Drummond,* 126 F.3d at 842. Absent evidence that a claimant's condition has improved, findings issued by an ALJ in a prior disability determination are binding on an ALJ in a subsequent proceeding. *Drummond*, 126 F.3d at 841 (citing 20 C.F.R. § 404.905). The

Commissioner has recognized the binding effect of findings made in a prior adjudication on

subsequent adjudicators:

> When adjudicating a subsequent disability claim with an unadjudicated period
> arising under the same title of the Act as the prior claim, adjudicators must adopt
> such a finding from the final decision by an ALJ or the Appeals Council on the
> prior claim in determining whether the claimant is disabled with respect to the
> unadjudicated period unless there is new and material evidence relating to such a
> finding or there has been a change in the law. . . .

AR 98-4(6).

### D. Specific Errors

On appeal, plaintiff alleges the following errors: (1) the ALJ committed errors in

weighing the medical opinion evidence and erroneously failed to provide a "function by

function" assessment of plaintiff's physical and mental RFC that is subject to review; (2) the

ALJ erred when she failed to evaluate the frequency, severity, and duration of plaintiff's

headaches and to impose functional limitations to account for his headaches; (3) the ALJ erred

by failing to account in the RFC for moderate limitations on plaintiff's ability to maintain

concentration, persistence, or pace; (4) the ALJ erred in assessing plaintiff's credibility; and (5)

the ALJ relied on an improper hypothetical posed to the VE which failed to incorporate several

physical and mental limitations.[6] (Doc. 7).

### 1. Functional assessment/weight to the medical opinions

Plaintiff alleges as his first assignment of error that the ALJ improperly weighed the

medical opinion evidence and erroneously failed to provide a "function by function" assessment

of his physical and mental RFC. (*Id*. at 3-6). Plaintiff makes numerous claims of error in

---

[6] Plaintiff alleges as the sixth assignment of error that the ALJ *de facto* reopened plaintiff's September 30, 2009 application; however, the Court has addressed this alleged error *supra* at n.1.

connection with the first assignment of error.  Plaintiff alleges: (1) the ALJ did not specify the weight she gave to the examining and non-examining medical sources but instead stated she was giving only "some weight" or "partial weight" without indicating which was greater under SSR 96-2p, what percentages these terms denoted (e.g., 15%, 50%, 80%), and the reasons for assigning such weight to the medical source opinions; (2) the ALJ erred by failing to explain the basis for her finding that plaintiff has the RFC for light work and by failing to identify the medical source she assigned the most weight in reaching this conclusion, thereby precluding review of her finding under SSR 96-2p and 96-8p; (3) the ALJ erred by failing to consider that some medical sources reviewed a larger portion of the medical record than others; (4) the ALJ erred by failing to incorporate into the RFC finding a restriction limiting plaintiff to maintaining concentration for only a short period of time, despite giving "significant weight" to a mental functional assessment that purportedly imposed this limitation[7]; and (5) the ALJ erred by failing to explain how she arrived at an RFC for light work in view of the limitations imposed by non-examining physician Dr. Jerry McCloud, M.D., who found plaintiff capable of only sedentary work; non-examining physician "Dr. Albert," who found plaintiff capable of medium work[8]; and consultative examining physician Dr. Martin Fritzhand, M.D., who found plaintiff capable of a "mild amount" of sitting, standing, walking, and heavy lifting.[9]

---

[7] This alleged error is discussed in connection with plaintiff's third and fifth assignments of error, *infra*.

[8] The ALJ did not provide an exhibit number for Dr. Albert's report, which she indicated was part of the file on the previous claim.

[9] Plaintiff also alleges that the ALJ erred by failing to take into account work-related limitations of extra breaks and missed work attributable to his headaches which were noted by Dr. Fritzhand.  (Doc. 7 at 5, citing Tr. 912).  This allegation relates to plaintiff's second assignment of error concerning whether the ALJ properly evaluated the evidence related to plaintiff's headaches and will be considered in connection with that assignment of error.

The Social Security regulations vest the ALJ with responsibility "for reviewing the evidence and making findings of fact and conclusions of law."  20 C.F.R. § 404.1527(e)(2). "Physicians render opinions on a claimant's RFC, but the ultimate responsibility for determining a claimant's capacity to work lies with the Commissioner."  *Profitt v. Comm'r. of Soc. Sec.*, No. 1:13-cv-679, 2014 WL 7660138, at *6 (S.D. Ohio Dec. 12, 2014) (Report and Recommendation), *adopted,* No. 1:13-cv-679, 2015 WL 248052 (S.D. Ohio Jan. 20, 2015) (quoting *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) (citing 42 U.S.C. § 423(d)(5)(B); *Nejat v. Comm'r of Soc. Sec.,* 359 F. App'x 574, 578 (6th Cir. 2009)). *See also* 20 C.F.R. § 404.1546(c) (the responsibility for assessing a claimant's RFC lies with the ALJ).  The ALJ is responsible for assessing a claimant's RFC based on all of the relevant medical and other evidence.  20 C.F.R. § 404.1545(a)(3).  *See also Moore v. Astrue*, No. CIV.A. 07-204, 2008 WL 2051019, at *5-6 (E.D. Ky. May 12, 2008) (the ALJ is responsible for assessing the claimant's RFC by examining all the evidence in the record) (citing 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c)); *Bingaman v. Comm'r of Soc. Sec.,* 186 F. App'x 642, 647 (6th Cir. 2006)).  *See also Ford v. Comm'r of Soc. Sec*., 114 F. App'x 194, 198 (6th Cir. 2004) (Court of Appeals stated that the RFC determination, which is part of the disability evaluation, is expressly reserved for the Commissioner).  An ALJ is not required to adopt precise limitations offered by a single medical source in assessing a claimant's RFC.  *Id*. (affirming District Court decision that upheld an ALJ finding of RFC for light work with restrictions, despite absence of a medical source opinion assessing plaintiff as capable of light work).  However, the "ALJ must not substitute his own judgment for a doctor's conclusion without relying on other medical evidence or authority in the record."  *Mason v. Comm'r of Soc. Sec.,* No. 1:07-cv-51, 2008 WL 1733181, at *13 (S.D. Ohio April 14, 2008) (citations omitted); *Hammock v. Comm'r of Soc. Sec.*, No.

1:12-cv-250, 2013 WL 1721943, at *8 (S.D. Ohio Apr. 22, 2013) (Report and

Recommendation), *adopted,* 2013 WL 4080714 (S.D. Ohio Aug. 13, 2013).

Here, the ALJ evaluated the medical evidence prior to the date last insured, including the

medical source opinions, and found there was no evidence of a material change in plaintiff's

condition "from the prior ALJ decision before December 31, 2011." (Tr. 34). The ALJ therefore

adopted the RFC for a restricted range of light work from ALJ Kenyon's January 2011 decision

on the 2008 application with additional restrictions of the ability to change standing/seating

positions for one to two minutes every hour or two without interference with work product and

frequent fine fingering. (Tr. 34). The ALJ fashioned this RFC based on medical evidence that

did not include an opinion from a medical source that assessed plaintiff as capable of performing

light work. Plaintiff alleges the ALJ committed several errors in weighing the medical evidence

and formulating the RFC.

The governing regulations provide that the opinion of a non-treating medical source is

weighed based on the medical specialty of the source, how well-supported by evidence the

opinion is, how consistent the opinion is with the record as a whole, and other factors which tend

to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(3)-(6); *Wilson*, 378 F.3d at 544.

The opinion of a non-treating but examining source is generally entitled to more weight than the

opinion of a non-examining source. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir.

2010); *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007); 20 C.F.R. §

404.1527(c)(1). Because a non-examining source has no examining or treating relationship with

the claimant, the weight to be afforded the opinion of a non-examining source depends on the

degree to which the source provides supporting explanations for his opinions and the degree to

which his opinion considers all of the pertinent evidence in the record, including the opinions of treating and other examining sources.  20 C.F.R. § 404.1527(c)(3).

Under the Social Security regulations, "a written report by a licensed physician who has examined the claimant and who sets forth in his report his medical findings in his area of competence . . . may constitute substantial evidence . . . adverse to the claimant" in a disability proceeding.  *Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 713 (6th Cir. 2013) (quoting *Richardson*, 402 U.S. at 402).  In addition, the opinions of state agency medical and psychological consultants may be entitled to significant weight where they are supported by record evidence.  *Id*. (citing 20 C.F.R. § 404.1527(e)(2)(i)).

Here, the ALJ thoroughly evaluated the medical evidence prior to the date last insured and gave valid reasons for the weight she afforded the various medical source opinions and for her finding that plaintiff remained capable of performing a restricted range of light work.  First, the ALJ provided valid reasons for giving only "some weight" to the opinion of consultative examining physician Dr. Fritzhand.  (Tr. 35).  Dr. Fritzhand examined plaintiff on November 8, 2012.  (Tr. 910-18).  He  reported that plaintiff complained primarily of headaches and blackout spells that had persisted since September 2006, and he also complained of continuing neck and bilateral shoulder pain and some bilateral finger numbness.  (Tr. 910).  Dr. Fritzhand noted that an April 2011 EMG disclosed bilateral carpal tunnel syndrome and ulnar neuropathy on the right, and an October 2011 MRI of the cervical spine disclosed "overall stable mild multilevel degenerative changes, worst at C6-C7."  (*Id*.).  Dr. Fritzhand performed manual muscle and sensory testing and opined based on the findings of his examination that plaintiff was capable of performing a "mild amount of sitting, ambulating, standing, bending, pushing, pulling, lifting and carrying heavy objects."  (Tr. 912).  The ALJ reasonably discounted Dr. Fritzhand's opinion

11

because he used the term "mild," which the ALJ found to be "vague and problematic," rather than providing specific functional limitations. (Tr. 35). The ALJ also found that Dr. Fritzhand's physical examination findings were largely "unremarkable" (Tr. 35), a conclusion that is substantially supported by the record. Dr. Fritzhand noted that plaintiff walked with a "slow limping gait" and range of motion was "diminished." (*Id*.; Tr. 912). Dr. Fritzhand also found diminished pin-prick over plaintiff's entire body, but he could not provide a medical explanation for this finding. (*Id*.). Dr. Fritzhand's remaining findings were largely normal. A Romberg test[10] was negative, there was no evidence of muscle atrophy, plaintiff could forward bend and squat without difficulty, there were no joint abnormalities, and grasp strength and manipulative ability were well-preserved bilaterally. (*Id*.). The ALJ justifiably relied on the lack of abnormal objective findings such as joint abnormalities and muscle weakness to discount Dr. Fritzhand's opinion. *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.").

The ALJ also reasonably discounted the opinions of the state agency reviewing physicians. Dr. McCloud reviewed the record on May 17, 2011, and assessed plaintiff as limited to a range of sedentary work with the ability to lift/carry up to 20 pounds occasionally. (Tr. 34, citing Tr. 627-34). State agency reviewing physician Dr. Linda Hall, M.D., reviewed the medical evidence of record on reconsideration on December 14, 2012, and affirmed Dr. McCloud's assessment as written. (Tr. 920). The ALJ gave "partial weight" to the opinion of Dr. McCloud as affirmed by Dr. Hall and to the opinion of state agency reviewing physician Dr.

---

[10] A Romberg test is a neurological test designed to detect poor balance. *See Tippen v. Commissioner of Social Sec*., No. 1:13cv1377, 2015 WL 1310778, at *3, n.1 (W.D. Mich. March 3, 2015).

Albert, who assessed plaintiff as limited to a range of medium level work in connection with his prior application.  (Tr. 34).  The ALJ found based on plaintiff's subjective allegations and the largely unremarkable diagnostic test results and physical examination findings, which the ALJ thoroughly reviewed in her written decision, that there had been no material change in plaintiff's physical RFC prior to the date last insured; accordingly, plaintiff did not have the RFC to perform medium work but neither was he restricted to a range of sedentary work.  (*Id*.).  The ALJ was justified in declining to adopt the state agency reviewing physicians' opinions which assessed plaintiff as capable of performing work at these exertional levels for the reasons the ALJ discussed in her written decision.

Plaintiff nonetheless argues that the ALJ's decision is not substantially supported and is not procedurally valid because the ALJ did not specify the meaning of the terms "some weight" and "partial weight" which she used when assigning weight to the examining and non-examining medical sources' opinions and did not indicate which was greater.  (Doc. 7 at 4).  Plaintiff suggests that the ALJ thereby failed to comply with Social Security Ruling 96-2p, which is a policy interpretation on "Giving Controlling Weight to Treating Source Medical Opinions."  *See* SSR 96-2p, 1996 WL 374188 (July 2, 1996).  Plaintiff has not explained how SSR 96-2p applies in this case given that no treating physician provided a functional assessment and plaintiff challenges the ALJ's weighing of *non-treating* physicians' opinions.  Nor has plaintiff cited any authority in support of his argument that the weight allotted a non-treating physician's opinion must be stated in terms of a percentage.  The record shows that the ALJ complied with the governing regulations and rulings by setting forth clear and substantially supported reasons in her written decision for both discounting the decisions of the reviewing physicians who found plaintiff capable of performing sedentary or medium work and for adopting the RFC for a range

13

of light work from the prior ALJ decision.  The ALJ's decision is sufficiently specific to allow this Court to perform its judicial review function.  Plaintiff has not explained what more the Social Security regulations and Rulings require of the ALJ.

Plaintiff further alleges that the ALJ erred by failing to take into account the fact that some examining and reviewing medical sources reviewed a larger portion of the record than others when preparing their assessments.  Plaintiff alleges that consultative examining physician Dr. Fritzhand and reviewing physician Dr. Hall (Tr. 910-18, 920) reviewed all of the medical records in the file, whereas Dr. McCloud reviewed fewer than all of the records in connection with his May 2011 examination (Tr. 627-34).  (Doc. 7 at 5, citing *Blakley v. Commissioner of Social Sec.,* 581 F.3d 399, 409 (6th Cir. 2009)).  Plaintiff has not shown that the ALJ erred in this regard.  The Sixth Circuit in *Blakley* found that a state agency reviewing physician's opinion may be entitled to greater weight than that of a treating or examining source in certain circumstances, such as when the "State agency medical . . . consultant's opinion is based on a review of a complete case record that . . . provides more detailed and comprehensive information than what was available to the individual's treating source."  *Id.* (quoting SSR 96-6p, 1996 WL 374180, at *3).  However, where a non-examining source has not reviewed a significant portion of the record and the ALJ fails to indicate that she has "at least considered [that] fact [] before giving greater weight" to the reviewing doctor's opinion, the ALJ's decision cannot stand. *Blakley*, 581 F.3d at 409 (quoting *Fisk v. Astrue*, 253 F. App'x 580, 585 (6th Cir. 2007)). *Blakley* has no applicability to the ALJ's decision in this case.  The ALJ here did not credit the opinion of an examining or reviewing physician over the opinion of a treating physician. Further, there is no indication in Dr. Fritzhand's report that he reviewed the medical evidence of record in connection with his November 2012 examination of plaintiff.  In any event, plaintiff's

14

argument is inconsequential because Dr. Hall, who reviewed the entire medical file before issuing the most recent assessment in December 2012, affirmed Dr. McCloud's May 2011 assessment as written. (Tr. 920). Thus, the ALJ did not err by failing to discount any medical source opinion based on the portion of the medical record the source reviewed.

The ALJ extensively reviewed the medical and other evidence when assessing the severity of the limitations imposed by plaintiff's physical impairments. (Tr. 30-35). The ALJ reasonably relied on objective medical findings, plaintiff's subjective reports, and plaintiff's activities to discount the assessments of the examining and reviewing physicians and to adopt the RFC from the prior ALJ decision. The ALJ did not err by discounting these opinions and fashioning an RFC that incorporated only those limitations that the ALJ found to be substantially supported by the evidence of record. The ALJ was not bound to adopt the assessment of a single medical source, and she fully explained her reasons for declining to do so. *See Moore*, 2008 WL 2051019, at *5-6. Plaintiff has not pointed to evidence in the record, including diagnostic test results or examination findings, to show his condition had worsened since the prior ALJ finding and to support more severe physical restrictions than those imposed by the ALJ. Plaintiff's allegation that the ALJ's decision cannot be reviewed pursuant to SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1986), which requires the ALJ to assess the claimant's "work-related abilities on a function-by-function basis," is simply not supported by the record. The ALJ sufficiently explained the basis for her finding that plaintiff is capable of performing a restricted range of light work.

For these reasons, plaintiff's first assignment of error should be overruled.

**2. Functional limitations imposed by plaintiff's headaches/blackouts**

Plaintiff presents an amalgam of errors under his second assignment of error. Plaintiff alleges that ALJ erred by failing to evaluate the frequency, severity, and duration of his headaches and by failing to impose functional limitations resulting from his headaches. (Doc. 7 at 6-7). Plaintiff alleges that the medical records "support the severity of the headaches" because they show he had suffered migraines for over one year as of September 2010 (Tr. 506); he suffered headaches and neck and shoulder pain in October 2010 (Tr. 593-94); his symptoms satisfied the criteria for chronic migraines in May 2011 (Tr. 645); he reported blackout spells in December 2011 (Tr. 707-09); in November 2011, he rated his headache pain as "5" on a good day and "9" on a bad day on a 1-10 analog number scale (Tr. 732); and he took Nortriptyline for his headaches in 2011 (Tr. 880). (Doc. 7 at 7). Plaintiff also contends that the ALJ erroneously failed to evaluate the severity of the headaches under Listing 11.03 in the Listing of Impairments, 20 C.F.R. § 404, Subpt. P, Appx. 1.[11] (*Id.* at 6).

Initially, the Court finds that plaintiff has waived his argument that the ALJ erred by failing to evaluate his headaches under Listing 11.03 because plaintiff did not develop this argument either legally or factually in the Statement of Errors.[12] *See Rice v. Comm'r of Soc. Sec.*, 169 F. App'x 452, 454 (6th Cir. 2006) (a plaintiff's failure to develop an argument

---

[11] In addition, plaintiff alleges that he would be unable to perform the jobs the VE identified because he would miss too much work and require extra breaks due to his headaches. (Doc. 7 at 7). This allegation goes to whether the ALJ adequately described his RFC in the hypothetical to the VE and will therefore be considered in connection with plaintiff's fifth assignment of error, which relates to the fifth step of the sequential evaluation process.

[12] At the time of the ALJ's decision, Listing 11.03 covered "nonconvulsive epilepsy" and included four elements: "(1) a documented typical seizure pattern, (2) seizures that occur more than once a week, (3) at least three months of prescribed treatment during which the weekly seizures occurred, and (4) specific unconventional behavior or significant interference with daily activities." *Hart v. Commissioner of Social Security*, No. 2:14-cv-00527, 2015 WL 5013359, at *2 (S.D. Ohio Aug. 25, 2015) (citing 20 C.F.R. § 404, Subpt. P, Appx. 1, § 11.03).

challenging an ALJ's non-disability determination amounts to a waiver of that argument). *See also McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones."). Plaintiff makes a one-sentence assertion that the ALJ failed to analyze his headaches under Listing 11.03 without identifying the impairment covered by that Listing, the requirements of the Listing, or the evidence that shows his headaches met the Listing as is his burden. *See Coldiron*, 391 F. App'x at 438-39 (citing *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)); *Forrest v. Commissioner of Social Security*, 591 F. App'x 359, 366 (6th Cir. 2015) (even if the ALJ's reasoning failed to support his step-three findings, the error was harmless because the plaintiff did not show his impairments met or equaled a listed impairment). The Court therefore declines to review plaintiff's claim of a step three error.

Further, the ALJ did not err by failing to include functional restrictions resulting from plaintiff's headaches in the RFC finding. The ALJ thoroughly considered the medical evidence prior to the date last insured of December 31, 2011 and reasonably determined that the objective medical evidence did not support a finding that plaintiff's condition had materially changed. (Tr. 30-36). Plaintiff has not pointed to evidence that indicates his headaches had worsened such that the ALJ's RFC for light work was not substantially supported. Rather, the evidence plaintiff cites documents plaintiff's complaints of headaches that predate ALJ Kenyon's decision and continued beyond the date of that decision with no appreciable change documented by plaintiff's medical providers. (Doc. 7 at 7, citing Tr. 506- plaintiff complained in September 2010 of a migraine that had persisted for over one year and chronic neck/shoulder pain; Tr. 594- plaintiff

17

complained of chronic neck and shoulder pain, chronic headache, and blackout spells in October 2010; Tr. 645- plaintiff was diagnosed with "moderate severity chronic daily headache" in May 2011 that met criteria for chronic migraine and was possibly linked to extensive caffeine consumption; Tr. 707-09- plaintiff complained in December 2011 of chronic headache and neck pain present since 2006 as well as worsening black out spells for which a follow-up with a neurologist was recommended; Tr. 732- plaintiff complained in November 2011 of chronic headache since September 2005, neck spasms which had shown some improvement on Flexeril, and episodic loss of coordination and confusion for the preceding four weeks and blackouts since 2006, which multiple EEGs had failed to capture; Tr. 880-plaintiff was diagnosed with chronic migraine in July 2011 with onset date of November 2010, with treatment notes reporting his condition was unchanged and that excessive caffeine intake contributed to the problem).

Thus, because plaintiff has not pointed to evidence showing that his chronic headaches materially worsened during the relevant time period, the ALJ did not err by failing to include additional functional limitations in the RFC finding to account for plaintiff's headaches. Plaintiff's second assignment of error should be overruled.

### 3. The mental RFC finding/hypothetical to the VE

Plaintiff alleges as his third and fifth assignments of error that the ALJ failed to account for his moderate difficulties in maintaining concentration, persistence, and pace in the RFC finding and in the hypothetical question presented to the VE.[13] (Doc. 7 at 7, 9-10).

---

[13] Plaintiff also presents arguments concerning his physical impairments in the fifth assignment of error. (Doc. 7 at 9-10). However, the Court will address only his mental impairments in connection with the third assignment of error.

First, plaintiff alleges the ALJ "erred in giving significant weight to Dr. Spadafora when this psychologist stated that [plaintiff] can only concentrate for short periods of time (Tr. 606-607)" and "[t]his does not take into account his ability to 'sustain' work for 40 hours a week." (Doc. 7 at 7, citing *Gayheart v. Commissioner of Social Sec.*, 710 F.3d 365, 377 (6th Cir. 2013) (in turn citing 20 C.F.R. § 404.1520a(c)(2))[14]; *see also* Doc. 15 at 3).

In discussing plaintiff's work-related mental abilities, Dr. Spadafora, the consultative examining psychologist, opined:

> [Plaintiff's] ability to maintain attention, concentration, persist with tasks was moderately impaired.  He can concentrate for a short period.  The pain and limited mobility prevents him from holding attention for any length of time.  While working he completed tasks and projects.  His pace at responding is normal.

(Tr. 606-607).  The ALJ gave significant weight to Dr. Spadafora's opinion that plaintiff was moderately impaired in his ability to maintain concentration and attention and persist with tasks, and he fashioned an RFC that restricted plaintiff to unskilled, simple, repetitive tasks and work with no rapid production pace.  (Tr. 30, 35).

Plaintiff suggests that the ability to "concentrate for a short period" is inconsistent with the ability to concentrate on a sustained basis for a 40-hour work week.  Plaintiff provides no factual or legal support for this proposition and, more importantly, Dr. Spadafora's opinion does not suggest such a limitation on plaintiff's ability to work.  Rather, Dr. Spadafora opines that

---

[14] This regulation provides in relevant part:

> We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis.  Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. . . .

20 C.F.R. § 404.1520a(c)(2).

plaintiff's ability to concentrate is only moderately limited, which is not work preclusive. *See White v. Commr. of Soc. Sec.,* 12-cv-12833, 2013 WL 4414727, at *13 (E.D. Mich. Aug. 14, 2013); *Jenkins v. Colvin*, 2:15-cv-1199, 2016 WL 3390587, at *3-4 (S.D. Ohio May 27, 2016) (Report and Recommendation), *adopted,* 2016 WL 3365418 (S.D. Ohio June 17, 2016); *Dotson v. Comm'r of Social Security*, No. 2:13-cv-1065, 2014 WL 6909437, *6 (S.D. Ohio Dec. 8, 2014), (Report and Recommendation), *adopted,* 2015 WL 1006087 (S.D. Ohio March 6, 2015); *Williams v. Comm'r of Soc. Sec*., 2:12-cv-430, 2014 WL 63919, at *25 (E.D. Tenn. Jan. 8, 2014). The authorities on which plaintiff relies, *Gayheart* and 20 C.F.R. § 404.1520a(c)(2), stand for the unremarkable proposition that the functional limitations of mental impairments are to be assessed on a sustained basis. Plaintiff has not explained why the ability to concentrate for short periods of time is inconsistent with an RFC for work involving only unskilled, simple, repetitive tasks with no rapid production pace. Therefore, plaintiff's argument is not well-taken.

Second, plaintiff argues that the RFC restricting him to work with no rapid production pace and only occasional contact with others does not account for the moderate deficiencies in persistence or pace which the ALJ credited.[15] (Doc. 7 at 7, citing *Ealy*, 594 F.3d at 515-17). Plaintiff's argument is without merit as *Ealy* is distinguishable from the instant case.

In *Ealy*, the Sixth Circuit held that where the medical opinion evidence establishes that a Social Security claimant has specific pace, speed, and concentration limitations, the ALJ must include such speed and pace-based restrictions in his RFC formulation and in the hypothetical questions posed to a VE. *See Ealy*, 594 F.3d at 516-17. The claimant's psychologist in *Ealy*

---

[15] This argument is somewhat difficult to decipher. Plaintiff's counsel argues: "[The ALJ] next erred when she specifically found moderate work-related limitations on concentration, persistence, or pace at Tr. 28 but then did not include these in her mental residual functional capacity. The term 'moderate' means 'impaired'. . . . The no rapid production pace and occasional contact with others do not cover these specific deficiencies in persistence or pace." (Doc. 7 at 7).

20

limited him to "simple, repetitive tasks for two-hour segments over an eight-hour day where speed was not critical." 594 F.3d at 516. The ALJ adopted the psychologist's opinion and specific limitations, but then streamlined the hypothetical question to include only a limitation to "simple, repetitive tasks and instructions in non-public work settings" and omitted the two-hour pace-based restriction. *Id*. The Sixth Circuit determined that the ALJ's hypothetical question to the VE did not fully convey plaintiff's limitations because it omitted the speed and pace-based restrictions the ALJ found the claimant to have.

Plaintiff has not identified any medical source who assessed specific or concrete pace-based restrictions like those found in *Ealy*. The medical evidence here does not include a mental functional assessment by a treating medical source. Nor are there mental health treatment notes that pre-date the expiration of plaintiff's insured status on December 31, 2011, as plaintiff did not seek such treatment before that date. The only mental health records for the period at issue are: (1) a psychiatric review technique and mental residual functional capacity assessment completed by state agency reviewing psychologist Dr. Carl Tishler, Ph.D. (Tr. 609-626) and affirmed as written on December 12, 2012 (Tr. 919); and (2) a mental health assessment prepared by consultative examining psychologist Dr. Spadafora (Tr. 601-07). Neither assessment imposes specific, concrete restrictions on plaintiff's ability to persist or concentrate as in *Ealy*. The Sixth Circuit has recently determined that "[c]ase law in this Circuit does not support a rule that a hypothetical providing for simple, unskilled work is per se insufficient to convey moderate limitations in concentration, persistence and pace." *Kepke v. Comm'r of Soc. Sec*., 636 F. App'x 625, 635 (6th Cir. 2016) (finding reliance on *Ealy* to be misguided where the plaintiff failed to cite to any evidence in the record that provided for specific, concrete limitations on her ability to maintain concentration, persistence or pace while doing simple,

unskilled work). *See also Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 436-37 (6th Cir. 2014) (distinguishing *Ealy* on the basis that claimant's moderate limitations in concentration, persistence and pace were conveyed by ALJ's hypothetical limitation to "simple, routine, and repetitive tasks" because psychologist "did not place any concrete functional limitations on [plaintiff's] abilities to maintain attention, concentration, or pace when performing simple, repetitive, or routine tasks"). The ALJ here accounted for plaintiff's severe mental impairments and moderate limitations in attention, concentration, and persistence by restricting him to "unskilled, simple, repetitive tasks with only occasional contact with co-workers, supervisors and the public" and "work with no rapid production pace." (Tr. 30). Plaintiff has not shown he suffers from additional mental restrictions that are supported by the evidence of record which the ALJ credited but erroneously omitted from the RFC and from the hypothetical to the VE.

Plaintiff's third assignment of error and fifth assignment of error, insofar as the latter relates to his mental impairments, should be overruled.

### 4. Credibility assessment

Plaintiff alleges that the ALJ erred in assessing his credibility. (Doc. 7 at 8-9). Title 20 C.F.R. § 404.1529 and Social Security Ruling 96-7p, 1996 WL 374186 (July 2, 1996)[16] describe a two-part process for assessing the credibility of an individual's statements about symptoms, including pain. First, the ALJ must determine whether a claimant has a medically determinable

---

[16] Effective March 28, 2016, SSR 96-7p has been superseded by SSR 16-3p, 2016 WL 1119029, which "provides guidance about how [the SSA] evaluate[s] statements regarding the intensity, persistence, and limiting effects of symptoms." *See* 2016 WL 1237954 (clarifying effective date of SSR 16-3p). There is no indication in the text of SSR 16-3p that the SSA intended to apply SSR 16-3p retroactively, and the Ruling therefore does not apply here. *Accord Cameron v. Colvin*, No. 1:15-cv-169, 2016 WL 4094884, at *2 (E.D. Tenn. Aug. 2, 2016).

physical or mental impairment that can reasonably be expected to produce the symptoms alleged; second, the ALJ must evaluate the intensity, persistence, and functional limitations of those symptoms by considering objective medical evidence and other evidence, including: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c), SSR 96-7p. "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). "Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Id.*

Upon review of the ALJ's complete credibility determination, the Court finds that the ALJ's credibility finding is substantially supported by the evidence of record and is entitled to deference. The ALJ cited five primary reasons for finding that plaintiff's subjective allegations and complaints were not fully credible to the extent they would preclude a restricted range of light work: (1) the diagnostic test results and physical exam findings were mostly unremarkable; (2) plaintiff had a history of noncompliance with medical recommendations related to his physical impairments; (3) there was no evidence that plaintiff had received mental health treatment or been hospitalized for a psychiatric illness prior to the date last insured; (4) plaintiff had reported unremarkable mental health symptoms during his most recent consultative

23

examination with Dr. Spadafora; and (5) plaintiff's daily activities were inconsistent with his allegations of debilitating mental health symptoms. (Tr. 34).

Plaintiff challenges the ALJ's statement that the diagnostic test results and physical examination findings were "mostly unremarkable," noting that a 2011 MRI and an EMG performed in January 2012, shortly after the date last insured, disclosed positive findings. (Doc. 7 at 8). However, the ALJ acknowledged that the record included some positive test results, including "mild to moderate" degenerative findings shown on the 2011 MRI. (Tr. 34, citing Tr. 718). The ALJ discussed the positive findings, which ranged from "negative" to "slight"/"mild" to "moderate," but he reasonably concluded these findings did not support the "nature and degree of pain and functional limitations alleged" by plaintiff. (Tr. 34, citing Tr. 565, 716, 718, 914).

Plaintiff alleges that the ALJ was not entitled to rely on a lack of objective medical findings "alone" in evaluating his credibility. (Doc. 7 at 9). However, as noted above and as plaintiff acknowledges, the ALJ relied on more than simply a lack of positive objective findings in assessing plaintiff's credibility. The ALJ also relied on plaintiff's noncompliance with treatment to discount his credibility, which plaintiff alleges was improper because the ALJ did not consider that he lacked medical insurance for an unspecified period of time. (Doc. 7 at 9, citing Tr. 1081). However, the record refutes plaintiff's challenge to this aspect of the ALJ's credibility assessment. When noting that plaintiff had a history of non-compliance with medical recommendations, the ALJ relied on evidence generated in January 2011 showing that plaintiff

24

was not taking his medication regularly or checking his blood sugar properly. (Tr. 34, citing Tr. 565). The treatment records show that plaintiff had insurance coverage at that time.[17]

Finally, plaintiff alleges that the ALJ erred by failing to consider that he took numerous medications for his diabetes and neuropathy (Tr. 506, 554, 644), that he started treatment at a pain clinic in June 2011 (Tr. 776-779), and that he has a "good work record." (Doc. 7 at 9). The ALJ was not required to consider plaintiff's work history when assessing his credibility. Further, while "[p]ersistent" attempts by an individual to obtain relief from pain or other symptoms generally tend to support allegations of intense or persistent symptoms (*see* SSR 96-7p, 1996 WL 374186, at *7), the ALJ was not required to credit plaintiff's allegations of debilitating pain and other symptoms based on his single visit to a pain clinic in June 2011, five years after the alleged onset date. Finally, plaintiff has not explained how the ALJ's alleged failure to consider his use of prescription medications for diabetes and neuropathy adversely impacted the credibility assessment, particularly when the treatment records plaintiff has cited fail to support plaintiff's complaints of debilitating symptoms. (*See* Tr. 554- plaintiff reported he had experienced nothing more than "everyday aches and pains (e.g., mild headache, back ache, strains) in the past week"; Tr. 644- plaintiff was "alert and oriented, not in distress today").[18]

---

[17] Plaintiff further suggests that the ALJ could not properly consider his noncompliance when evaluating his credibility because there is no evidence as to whether treatment would have remedied his condition and restored his ability to work. (Doc. 7 at 9, citing SSR 82-59, 1982 WL 31384 (Jan. 1, 1982)). SSR 82-59 sets forth the following policy: "An individual who would otherwise be found to be under a disability, but who fails without justifiable cause to follow treatment prescribed by a treating source which the [SSA] determines can be expected to restore the individual's ability to work, cannot by virtue of such 'failure' be found to be under a disability." SSR 82-59 has no bearing on the question of whether the ALJ properly considered plaintiff's failure to comply with treatment when assessing his credibility.

[18] Plaintiff does not challenge the ALJ's third, fourth and fifth reasons for discounting his credibility.

Thus, plaintiff has not shown that the ALJ committed any error in connection with the assessment of his credibility. The ALJ thoroughly evaluated the relevant factors and evidence of record and the reasons posited for his credibility finding are substantially supported by the record. The ALJ's credibility finding is entitled to deference and plaintiff's fourth assignment of error should be overruled.

### 5. The alleged step five vocational errors

Plaintiff alleges that the ALJ erred at step five of the sequential evaluation process by relying on an improper hypothetical that failed to account for all of his impairments.[19] (Doc. 7 at 9-10). Plaintiff alleges the hypothetical the ALJ posed to the VE misrepresented his physical condition by failing to include the extra breaks he would require or the number of days of work he would miss due to his headaches and blackouts (Tr. 1098-1100); the "mild" amount of sitting, standing and walking assessed by Drs. Fritzhand and Hall (Tr. 912, 920); and problems with handling, fingering, feeling and lifting attributable to hand neuropathy (Tr. 1084-85). (Doc. 7 at 10). Plaintiff alleges that according to the VE's testimony, he cannot perform the unskilled jobs the VE listed if he needs to take over 30 minutes of breaks a day. (Doc. 15 at 3, citing Tr. 1099-1100.

"In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments." *Ealy*, 594 F.3d at 516. However, the ALJ's hypothetical question must include only the alleged limitations of the claimant that the ALJ accepts as credible and that are supported by the

---

[19] Whether the ALJ properly accounted for plaintiff's mental impairments in the hypothetical to the VE is addressed in connection with plaintiff's third assignment of error, *supra*.

evidence. *See Gant v. Comm'r of Soc. Sec.*, 372 F. App'x 582, 585 (6th Cir. 2010) ("[I]n formulating a hypothetical question, an ALJ is only required to incorporate those limitations which he has deemed credible.") (citing *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118-19 (6th Cir. 1994)); *Turcus v. Soc.Sec. Admin.*, 110 F. App'x 630, 633 (6th Cir. 2004) ("The ALJ is not obligated to include unsubstantiated complaints and restrictions in his hypothetical questions."). If the ALJ's hypothetical question included the limits that the ALJ found credible, the ALJ could properly rely on the VE's testimony as substantial evidence that the plaintiff is able to perform jobs that exist in significant numbers in the national economy. *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007).

The evidence cited by plaintiff does not show that the ALJ improperly relied on the VE's testimony to find plaintiff can perform a significant number of jobs in the national economy. Plaintiff does not cite any medical or other evidence to support his allegations that his headaches and "blackouts" would cause him to take too many breaks on unskilled jobs and to be absent from work an excessive number of days. (*See* Doc. 7 at 10, Doc. 15 at 3). Because plaintiff's allegations are not substantially supported, the ALJ was not bound to include these restrictions in the hypothetical to the VE. Further, the ALJ did not credit Dr. Fritzhand's assessment restricting plaintiff to a "mild" amount of standing, walking, and sitting but instead gave the opinion only "some weight." (Tr. 35, citing Tr. 912). The ALJ therefore did not err by failing to include the restrictions assessed by Dr. Fritzhand in the hypothetical posed to the VE. Finally, the ALJ included a limitation "to frequent fine fingering" in his hypothetical to the VE to account for plaintiff's bilateral neuropathy. (Tr. 1098). Plaintiff relies on only his vague testimony to allege the ALJ erred in this regard and has not explained what additional limitations his neuropathy allegedly imposed. (Doc. 7 at 10, citing Tr. 1084-85).

Thus, the record does not support a finding that the ALJ improperly relied on the VE's testimony at the fifth step of the sequential evaluation process. The hypothetical the ALJ posed to the VE accounted for the subjective complaints that the ALJ credited and those functional limitations that the ALJ reasonably determined were supported by the medical evidence of record. The VE's testimony therefore constituted substantial evidence to support that ALJ's finding that plaintiff was able to perform a significant number of jobs that exist in the national economy. Plaintiff's fifth assignment of error should be overruled.

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be **AFFIRMED.**

Date : 11/23/16                                     s/Karen L. Litkovitz
                                                             Karen L. Litkovitz
                                                             United States Magistrate Judge

## UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

RANDY J. HENSLEY,                                    Case No. 1:15-cv-711
      Plaintiff,                                Barrett, J.
                                                     Litkovitz, M.J.
    vs.


COMMISSIONER OF
SOCIAL SECURITY,
      Defendant.


### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).