UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Randy J. Hensley,

    Plaintiff,

    v.                                                         Case No. 1:15cv711

Commissioner of Social Security                    Judge Michael R. Barrett

    Defendant.

## ORDER

This matter is before the Court upon the Magistrate Judge's November 23, 2016 Report and Recommendation ("R&R") which recommends that the decision of the Commissioner be affirmed. (Doc. 16).

Notice was given to the parties under 28 U.S.C. § 636(b)(1)(c). Plaintiff filed objections to the Magistrate Judge's R&R. (Doc. 17). The Commissioner filed a Response to the Objections. (Doc. 18).

When objections are received to a magistrate judge's report and recommendation on a dispositive matter, the district judge "must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). After review, the district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.*; *see also* 28 U.S.C. § 636(b)(1).

The Magistrate Judge completed a comprehensive review of the record and the same will not be repeated here except to the extent necessary to address Plaintiff's

objections.

Plaintiff objects to the Magistrate Judge's conclusion that the ALJ properly weighed the medical opinions in the record in assessing Plaintiff's residual functional capacity ("RFC"). Plaintiff explains that based on the medical opinions in the record, Plaintiff was only able to perform sedentary work, not work at the light level. In support, Plaintiff argues that the ALJ ignored the limitations imposed by consultative examining physician Dr. Martin Fritzhand, M.D., who found plaintiff capable of a "mild amount" of sitting, standing, walking, and heavy lifting. Plaintiff explains that these limitations are inconsistent with the ability to sustain light work. Plaintiff also argues that the ALJ failed to evaluate the opinion of Dr. Linda Hall, M.D. However, the record shows that on December 14, 2012, Dr. Hall reviewed the medical evidence in the record on reconsideration and affirmed Dr. McCloud's assessment. (Tr. 920). Dr. McCloud found that Plaintiff was limited to sedentary work. (Tr. 627-634). The ALJ only gave partial weight to Dr. McCloud's opinion. (Tr. 34). However, the ALJ explained that she also "considered the claimant's subjective allegations and has adopted the restriction to light level work from the prior ALJ decision." (Tr. 34). The ALJ explained that the "diagnostic test results and physical examination findings have been mostly unremarkable. Accordingly, there are no indications of material changes from the prior ALJ finding that the claimant can perform a range of light work." (Tr. 34).

The Magistrate Judge found that the ALJ did not err in weighing the medical opinions and fashioning an RFC that incorporated only those limitations that the ALJ found to be substantially supported by the evidence in the record. Citing *Blakley v. Comm'r Of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009), Plaintiff argues that Dr. Hall reviewed

the medical records in 2012 and should be given more weight because she reviewed more of the record. Plaintiff made this same argument before the Magistrate Judge, who explained that *Blakely* was not applicable because Dr. Hall was a reviewing physician, and the ALJ did not credit the opinion of an examining or reviewing physician over the opinion of a treating physician.

In addition, because Dr. Hall was not a treating physician, it was not error for the ALJ to fail to assign a specific weight to the opinion of Dr. Hall. In a case where the ALJ failed to discuss the opinion of an examining physician, the Sixth Circuit observed:

> While it might be ideal for an ALJ to articulate his reasons for crediting or discrediting each medical opinion, it is well settled that:
>
> > [a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party. Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts.

*Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507-508 (6th Cir. 2006) (quoting *Loral Defense Systems–Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999) (citations and internal quotation marks omitted)).

Finally, the Court notes that "[a]n ALJ considers numerous factors in constructing a claimant's RFC, including the medical evidence, non-medical evidence, and the claimant's credibility." *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 443-44 (6th Cir. 2010) (citing SSR 96–5p, 1996 WL 374183, at *3; SSR 96–8p, 1996 WL 374184, at *5; *Hickey-Haynes v. Barnhart*, 116 F. App'x 718, 726-27 (6th Cir. 2004)). The Court concludes that in this instance, the ALJ properly assessed Plaintiff's RFC. The Court notes that the ALJ only gave "some weight" to the opinion of consultative examining

3

physician Dr. Fritzhand because (1) because Dr. Fritzhand used the term "mild," instead of providing specific functional limitations; (2) Dr. Fritzhand's physical examination findings were largely "unremarkable;" and (3) even though Dr. Fritzhand found diminished pin-prick over Plaintiff's entire body, he could not provide a medical explanation for this finding. (Tr. 35). The ALJ also found Plaintiff to be less than fully credible with regard to the nature and degree of pain and functional limitations. (Tr. 34). The ALJ supported this finding with the diagnostic tests and physical examination findings in the record. (Tr. 34). Therefore, the Court concludes that the ALJ did not err in finding that Plaintiff was capable of performing light work as part of the RFC assessment.

Next, Plaintiff objects to the Magistrate Judge's conclusion that the ALJ properly concluded that Plaintiff was able to perform unskilled work with occasional contact with others and no rapid production pace. Plaintiff points out that the jobs of cleaner, pricer or photocopier machine operator require work at a pace set by the employer alone. Plaintiff also points out that he had trouble affording treatment for his nerves and therefore, he should not be penalized for not receiving treatment.

At the outset, it should be noted that the Magistrate Judge clarified that the VE "actually testified that the hypothetical individual would be unable to perform the price marker job but would be able to perform the job of mail sorter, with approximately 700 jobs in the Cincinnati region and 70,000 jobs in the nation." (Doc. 16, PAGEID # 75, n.5) (citing Tr. 37, 1098). The Court also notes that the hypothetical to the VE was specifically limited to "work with no rapid production pace." (Tr. 1097). Plaintiff seems to question the production pace required by these jobs. However, the VE testified that her testimony was consistent with the Dictionary of Occupational Titles. (Tr. 1097,

1098). To the extent that Plaintiff is arguing that the questions to the VE did not accurately portray Plaintiff's physical and mental impairments, the Magistrate Judge addressed this argument and noted that Plaintiff had not provided factual or legal support for the proposition that the ability to concentrate for a short period of time is inconsistent with the ability to concentrate on a sustained basis for a 40-hour work week. (Doc. 16, PAGEID # 89). The Court notes that Plaintiff has not provided anything additional on this point in his objections. Moreover, as the Magistrate Judge explained, a moderately limited ability to concentrate is not work preclusive. (Doc. 16, PAGEID # 89-90) (citing cases).

As to Plaintiff's treatment for his nervous impairments, what the Magistrate Judge stated was that:

> The medical evidence here does not include a mental functional assessment by a treating medical source. Nor are there mental health treatment notes that pre-date the expiration of plaintiff's insured status on December 31, 2011, as plaintiff did not seek such treatment before that date. The only mental health records for the period at issue are: (1) a psychiatric review technique and mental residual functional capacity assessment completed by state agency reviewing psychologist Dr. Carl Tishler, Ph.D. (Tr. 609-626) and affirmed as written on December 12, 2012 (Tr. 919); and (2) a mental health assessment prepared by consultative examining psychologist Dr. Spadafora (Tr. 601-07). Neither assessment imposes specific, concrete restrictions on plaintiff's ability to persist or concentrate . . .

(Doc. 16, PAGEID # 91). This is in stark contrast to the situation in *Blankenship v. Bowen*, 874 F.2d 1116 (6th Cir. 1989), cited by Plaintiff. In *Blankenship*, the Sixth Circuit was determining the onset date of the claimant's progressively disabling mental impairment. *Id.* at 1121. As part of its analysis, the Court noted that the claimant "may have failed to seek psychiatric treatment for his mental condition, but it is a questionable

5

practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Id.* at 1124. However, even though the claimant in *Blankenship* had not been treated for a long period of time, the record included a treating psychiatrist's opinion that the claimant suffered from a progressive impairment. *Id.* at 1121. *See also McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 840 (6th Cir. 2006) (explaining that in *Blankenship*, "the claimant was diagnosed with multiple psychiatric disorders including chronic generalized anxiety neurosis, conversion reaction, and schizoid personality, all well in advance of his disability determination for schizophreniform disorder. . . . In short, the medical record in *Blankenship* contained a plethora of evidence supporting an earlier onset date of disability."). Similar evidence does not exist in this record.

In addition, the Court notes that Social Security Ruling 96-7p provides that "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96–7p, 1996 WL 374186, at *7–8 (S.S.A. July 2, 1996). However, Plaintiff does not cite to a place in the record where Plaintiff raised the issue of his inability to afford treatment for his nerves. At most, Plaintiff testified at the hearing before the ALJ that his medical insurance coverage was inconsistent:

> . . . I had a neurologist – well, I went to several different ones. And as insurance and everything would cancel out and something else would kick in, I would have to go to a different doctor because of not being covered by the same insurance with the different doctors.
>
> But I ended up with a Dr. Nichols that I do see.

6

> Q: Okay.
>
> A: And I seen him up till March, of '08, I believe it was.
>
> Q: Okay.
>
> A: . . . But when my insurance finally did run out completely, he said that there was nothing else he could do for me. So I went for a quite long period of time there without any doctors just trying to take care of it myself and just trying to get by any way I possibly could, which wasn't working
>
> Then I had a wonderful lady at Jobs and Family Services help me get in through UC clinic, and low and behold, I got back in with Dr. Nichols there.

(Tr. 1080-81). Moreover, the ALJ did not cite a lack of medical treatment as a basis for her findings. Instead, the ALJ cited the diagnosis of major depressive order by Dr. Spadafora, a consultative examiner, and considered this condition in the formulation of the RFC by limiting Plaintiff to "unskilled, simple, repetitive tasks with only occasional contact with co-workers, supervisors, and the public; and work with no rapid production pace." (Tr. 33). Therefore, the Court finds that the ALJ did not err in concluding that Plaintiff was able to perform unskilled work with occasional contact with others and no rapid production pace.

Plaintiff also objects to the Magistrate Judge's conclusion that the ALJ properly considered Plaintiff's headaches. Plaintiff argues that he must take over thirty minutes of breaks in a work day due to headaches. However, the Magistrate Judge found that the ALJ did not err by failing to include functional restrictions resulting from plaintiff's headaches in the RFC finding. The ALJ explained: "[d]espite the claimant's complaints of severe migraines, a head MRI was negative, and a cervical spine MRI also showed only "mild to moderate" degenerative findings." (Tr. 34). The ALJ concluded that "[t]he nature and degree of pain and functional limitations alleged by the claimant is not

supported by medical and non-medical sources." (Id.)

"There is no question that subjective complaints of a claimant can support a claim for disability, if there is also objective medical evidence of an underlying medical condition in the record." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003). However, in this instance, the ALJ determined that the objective medical evidence did not support Plaintiff's complaints of headaches. Therefore, the Court finds that the ALJ properly considered Plaintiff's headaches.

In a related argument, Plaintiff objects to the Magistrate Judge's conclusion that the ALJ properly evaluated Plaintiff's credibility. Plaintiff points to the recently issued Social Security Ruling 16-3p, which supersedes SSR 96-7p and eliminates the use of the term "credibility" and clarifies that subjective symptom evaluation is not an examination of a claimant's character. 2016 WL 1119029 at *1 (March 16, 2016).[1] Instead, SSR 16-3p instructs the ALJ to "consider an individual's statements about the intensity persistence, and limiting effects of symptoms, and . . . evaluate whether the statements are consistent with the objective medical evidence and the other evidence." 2016 WL 1119029 at *4. Plaintiff again raises the argument regarding whether Plaintiff is limited sedentary work, but the Court has addressed that argument above. However, Plaintiff raises an additional argument: that his "daily activities" do not show any ability to sustain work for forty hours a week.

The ALJ discussed Plaintiff's daily activities in the context of the credibility of Plaintiff's mental allegations. (Tr. 34). The ALJ noted that Plaintiff reported "engaging

---

[1] However, Plaintiff appears to fault the ALJ for *not* discussing credibility. In any event, Plaintiff does not explain how the ALJ's analysis would have been any different had SSR 16-3p been issued at the time of the ALJ's decision on May 15, 2014.

8

in a variety of daily activities that indicate a higher level of functioning than alleged in the hearing, including cooking and grocery shopping with his wife, visiting and taking care of his aunt in the nursing home, and having no difficulties with personal care." (Id.) However, the ALJ did account for Plaintiff's subjective complaints of depression by assigning him certain mental limitations in the RFC. (Id.) "Substantial evidence exists when a 'reasonable mind might accept' the relevant evidence 'as adequate to support a conclusion.'" *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981)). The Court must defer to the Commissioner's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). The Court finds that substantial evidence supports the ALJ's evaluation of Plaintiff's statements about his daily activities.

Finally, Plaintiff objects to the Magistrate Judge's conclusion that the ALJ did not err at step five of the sequential evaluation process by relying on an improper hypothetical that failed to account for all of his impairments. Plaintiff argues the hypotheticals were improper because he not capable of performing light work. The Court has rejected this argument above and will not address it again. Plaintiff also argues that the hypotheticals were improper because they left out the moderate deficiencies of concentration, persistence or pace. However, the ALJ's hypothetical to the VE limited work to "unskilled, simple, repetitive tasks with only occasional contact with coworkers, supervisors, and the public; and further limited to work with no rapid production pace." (Tr. 1097). The Court finds this hypothetical question was proper. *Accord Black v.*

*Comm'r of Soc. Sec.*, No. 5:11–cv–2770, 2012 WL 4506018, at *14 (N.D.Ohio Sept.28, 2010) (hypothetical question accounts for moderate limitations in concentration, persistence, or pace when it limits claimant to "simple, routine, and repetitive tasks performed in a work environment free of fast paced production requirements, involving only simple, work-related decisions, and routine workplace changes").  Therefore, the Court concludes that the ALJ did not err at step five of the sequential evaluation process by relying on an improper hypothetical that failed to account for all of his impairments.

Based on the foregoing, the Court hereby **ADOPTS** the Magistrate Judge's November 23, 2016 R&R.  (Doc. 16).  Accordingly, the decision of the Commissioner is **AFFIRMED**.  This matter shall be **CLOSED and TERMINATED** from the docket of this Court.

**IT IS SO ORDERED.**

                                        */s/ Michael R. Barrett*
                                        Michael R. Barrett, Judge
                                        United States District Court